**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**David Miller,**

**Plaintiff,**

**-vs-**

**Sean Duffy, Secretary, United States Department of Transportation,**

**Defendant.**

**Case No. 23-CV-2315**

**JUDGE PAMELA A. BARKER**

**MEMORANDUM OPINION & ORDER**

This matter is before the Court upon Plaintiff David Miller's ("Plaintiff" or "Miller") Motion for Leave to Amend filed on February 19, 2025 ("Plaintiff's Motion"). (Doc. No. 21.) On March 19, 2025, Defendant Sean Duffy, Secretary of the United States Department of Transportation ("Defendant" or "the Secretary"),[1] filed a Brief in Partial Opposition to Plaintiff's Motion ("Defendant's Opposition"). (Doc. No. 23.) On March 25, 2025, Plaintiff filed a Reply Brief in support of Plaintiff's Motion ("Plaintiff's Reply"). (Doc. No. 24.)

For the following reasons, Plaintiff's Motion is GRANTED.

## I. Background

### A. Plaintiff's allegations

Plaintiff's Complaint filed on December 4, 2024, includes the following allegations. "Plaintiff has been employed as an Air Traffic Control Specialist with the FAA since July 30, 2008,

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Plaintiff has moved to substitute Secretary of Transportation Sean Duffy as the Defendant after Secretary Duffy replaced Secretary Buttigieg. (Doc. No. 21-1 at PageID# 85.) Under Fed. R. Civ. P. 25(d), when a public officer who is a party in an official capacity ceases to hold office while the action is pending, "the officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d).

and has been employed at the Cleveland ARTCC since November 2008." (Doc. No. 1 at ¶ 5.) "Between 2012 to 2020, Brendt Sundermeir was his first level supervisor. Between 2019 and 2022, Michael Sands was his second level supervisor." (*Id.* at ¶ 6.) "Plaintiff is male and bisexual." (*Id.* at ¶ 7.) "In or around March 2016, Plaintiff received a package at his home. It was a cylinder tube with the words 'big ass dildos' and 'Platinum member' on the outside of the package. The outside of the package also depicted multiple sex toys." (*Id.* at ¶ 8.) "The package contained Plaintiff's water bottle that was only used and kept at his work location. An Agency employee stole Plaintiff's property and shipped it to him with graphic language and images relating to Plaintiff's sexual orientation." (*Id.* at ¶ 9.) "During this same time period, Plaintiff's coworker Russell Moody would target him for harassment and repeated jokes about Plaintiff 'liking men'." "Plaintiff reported this harassment to his supervisor Brendt Sundermeier who told him that there was nothing that could be done." (*Id.* at ¶¶ 10-11.)

"In or around 2019, Aric Alston, front line manager for the Agency, made comments that Plaintiff was working overtime in order to pay for his wife's abortion." (*Id.* at ¶ 12.) "Mr. Alston would regularly make hostile harassing comments about Plaintiff and his sexual orientation and spread rumors around the facility in order to alienate Plaintiff from his coworkers and recruit others to harass Plaintiff." (*Id.* at ¶ 13.) "During this same time period, Mr. Alston would make comments about Plaintiff being caught on camera having sex with another man at work." (*Id.* at ¶ 14.) "Prior to these comments by Mr. Alston, Plaintiff testified in a coworker's EEO complaint that listed Mr. Alston as a Responsible Management Official ('RMO')." (*Id.* at ¶ 15.) "Mr. Alston claimed to be a former EEO Investigator and stated that he knows the system' in order to intimidate Plaintiff into not reporting Alston's harassment and retaliation." (*Id.* at ¶ 16.) "Because these harassing statements

were being made by a management official, others in the office believed them to be factual when they were not. This led to Plaintiff being alienated from his coworkers because of Mr. Alston's homophobic and harassing actions." (*Id.* at ¶ 17.)

"In or around July 2020, coworkers and/or at the Agency hung doctored images of Plaintiff and another male employee engaging in sexual relations around the office for others to see." (*Id.* at ¶ 18.) "The image depicted Fred Flintstone and Barney Rubble engaging in oral sex. Superimposed over Barney Rubble were the initials 'EZ' which was Plaintiff's operating initials at the Agency." (*Id.*)

"In or around 2020, coworkers/managers at the Agency spread rumors that Plaintiff was having sexual relations with both male and female employees." (*Id.* at ¶ 19.) "One coworker, Joe Moore, asked if Plaintiff was 'dipping his pen in company ink.'" (*Id.* at ¶ 20.) "Another coworker, Ryan Svegel, was told that Plaintiff had sex with multiple people at work, and that there was a rumor that Plaintiff had sex with Svegel himself." (*Id.* at ¶ 21.) "In or around Fall 2020, Plaintiff had multiple items stolen from his dedicated headset drawer including gum, sunglasses, nice pens, and an amount of cash." (*Id.* at ¶ 22.) "Plaintiff reported this incident to his union representative Darryl Bally to no resolution." (*Id.* at ¶ 23.)

"In or around Spring 2021, July 2021, October 2021, and September 2022, Agency employees defaced [his] personal spaces with homophobic slurs and graphic homosexual pornography." (*Id.* at ¶ 24.) "Plaintiff reported these incidents to his second-line supervisor Michael Sands but no action was taken." (*Id.* at ¶ 25.) "In or around August 2021, Aric Alston reported observing Plaintiff in a 'sleep like state,' which was untrue. As a result of Alston's actions, Plaintiff was subjected to an investigation and proposed for removal from federal service and subjected to various other harassing

actions." (*Id.* at ¶ 26.) "Because of Alston's harassing and retaliatory behavior, Plaintiff was detailed from his normal position and forced to sit in a room by himself between January 14, 2022 to August 29, 2022." (*Id.* at ¶ 27.) "Plaintiff was also subjected to investigation and proposed discipline for swearing at work, despite others engaging in the same actions and receiving no discipline." (*Id.* at ¶ 28.)

"On March 18, 2022, Plaintiff received a homophobic death threat at his home that also contained graphic homosexual pornography. The letter specifically referenced his work at the Agency, the section to which he was assigned, and directly related to Plaintiff's work duties and location. It was unequivocally performed by an Agency employee." (*Id.* at ¶ 29.) "[I]n May 2022, Plaintiff's personal vehicle was vandalized with homophobic slurs and graphic hate images." (*Id.* at ¶ 30.) "Plaintiff reported this incident to Tom Layton, whose only response was that 'he can't imagine who could do that.'" (*Id.* at ¶ 31.) "In or around August, 2022, Plaintiff's vehicle was vandalized with garbage while at work." (*Id.* at ¶ 32.) "In September 2022, Plaintiff was told by Tom Layton that "'all eyes are on you' and forced his reassignment to another area of the facility, reducing his seniority in the new area." (*Id.* at ¶ 33.)

"In or around early 2023, the Agency received an 'anonymous complaint' that Plaintiff was showing coworkers a sexually explicit video. This allegation is false." (*Id.* at ¶ 34.) "Based upon this 'anonymous complaint,' Plaintiff was subjected to an interview regarding the allegation that he was showing coworkers pornography at work." (*Id.* at ¶ 35.)

"In or around July 2023, an Agency employee falsely accused Plaintiff of driving his vehicle towards another person." (*Id.* at ¶ 36.) "Between July and October 2023, an Agency employee falsely reported that Plaintiff spoke about his sexuality at work in an inappropriate manner, alleged

that he masturbated in the building while at work, and made unwanted physical and verbal advances to his coworkers." (*Id.* at ¶ 37.) "On October 23, 2023, Plaintiff was subjected to a *Weingarten* interview based on these false allegations." (*Id.* at ¶ 38.)

"On October 4, 2022, Plaintiff initiated contact with the Agency's EEO office regarding paragraphs 8 through 33" of the Complaint. (*Id.* at ¶ 39.) "A notice of Right to File a Formal Complaint was issued on November 3, 2022." (*Id.* at ¶ 40.) "A formal complaint was filed on November 18, 2022." (*Id.* at ¶ 41.) "On April 11, 2023, a Report of Investigation was issued." (*Id.* at ¶ 42.) "A Final Agency Decision was issued on September 7, 2023." (*Id.* at ¶ 43.) "Regarding paragraphs 34 and 35, Plaintiff is currently in the Formal Complaint process through the Agency, but considering their relation to paragraphs 8 through 33, Plaintiff is requesting they be included in this complaint for purposes of judicial economy." (*Id.* at ¶ 44.) "Regarding paragraphs 36 through 38, Plaintiff has requested amendment of the Formal Complaint discussed in Paragraph 44. Plaintiff is requesting they be included in this complaint for purpose of judicial economy." (*Id.* at ¶ 45.)

**B. Relevant Procedural History**

In Plaintiff's Complaint filed on December 4, 2023, Miller asserted three "causes of action" against Defendant: "Sexual Harassment/Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964" (First Cause of Action); "Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964" (Second Cause of Action); and "Retaliation in Violation of Title VII of the Civil Rights Act of 1964" (Third Cause of Action). (Doc. No. 1 at PageID#s 6-10.) On April 2, 2024, Defendant filed his Answer. (Doc. No. 12.) Therein, Defendant specifically denied Plaintiff's allegations in paragraphs 44 and 45 of the Complaint "that unexhausted claims be included in the instant Complaint." (*Id.* at ¶¶ 44, 45.)

On February 19, 2025, Miller filed Plaintiff's Motion and attached to it as Exhibit 1 his Proposed Amended Complaint that includes the following allegations that were not included in the original Complaint:

> 22. On April 1, 2021, Plaintiff testified in a coworker's EEO complaint that listed Mr. Alston as a Responsible Management Official ("RMO").
>
> 23. Mr. Alston claimed to be a former EEO Investigator and stated that "he knows the system" in order to intimidate Plaintiff into not reporting Alston's harassment and retaliation.
>
> 25. April 27, 2021, Aric Alston falsely reported that Plaintiff brought $140,000 in cash to the office.
>
> 26. May 5, 2021, James Gomoka reported 'concerns' that were over a year old.
>
> 27. May 12, 2021, Matthew Vogel reported that Aric Alston reported false incidents of misconduct against Plaintiff.
>
> 28. July 16, 2021[,] Matthew Vogel reported Plaintiff for not waiting long enough for a coworker to respond if he wanted a break.
>
> 29. August 8[,] 2021, Plaintiff found gay pornography in his headset drawer.
>
> 30. August 12, 2021[,] Plaintiff found gay pornography is his locker.
>
> 31. August 16, 2021, a cylindrical package from "Big Ass Dildos" containing a pink vibrator was sent to Plaintiff's home.
>
> 32. On or about August 23, 2021, an inflatable male blow-up sex doll was sent to Plaintiff's home.
>
> 33. On September 1, 2021, Plaintiff was falsely accused of walking near a bulldozer.

(Doc. No. 21-3 at PageID#s 100-01, ¶¶ 25-33).

Miller asserts that it was during discovery in this matter that facts were uncovered that permit him to allege with more specificity the numerous acts of harassment to which he was a victim, including more specific dates of the receipt of pornography and sexual paraphernalia, and a correction

to the date of Plaintiff's activity. (Doc. No. 21-1, PageID # 82.)[2] Miller also asserts that it was during discovery that he "uncovered that one of the Responsible Management Officials in Plaintiff's underlying complaint to the Agency's EEO office orchestrated and lead a retaliatory harassment campaign against Plaintiff by reporting, and recruiting others in the workplace to report Plaintiff for various incidents of alleged misconduct, some of which are entirely fabricated, and the others were years old, in order to harass Plaintiff."[3] (*Id.*)

According to Miller, this Court should grant Plaintiff's Motion under Fed. R. Civ P. 15(a)(2) because justice so requires, i.e., there has been no undue delay, bad faith, dilatory motive or undue prejudice, and the granting of Plaintiff's Motion would not be futile because the Proposed Amended Complaint should withstand a Rule 12(b)(6) motion to dismiss. Specifically, and stated succinctly, Plaintiff argues that the opposed amendments are not futile since they "directly relate to the claims that he made previously against the Agency and Mr. Alston specifically." (Doc. No. 21-1, PageID # 92.) Plaintiff submits that the opposed amendments "amplify, clarify, or more clearly focus" his EEO Complaint and that therefore they "have been exhausted and the judicial complaint is proper." (*Id.*)

In Defendant's Opposition filed on March 19, 2025, the Secretary represents that he does not oppose inclusion of paragraphs 22, 23, 29, 30, 31, and 32 in the Proposed Amended Complaint, but he does oppose the inclusion of paragraphs 25, 26, 27, 28, and 33 therein (the "opposed amendments"). The Secretary does not assert or argue that Plaintiff's Motion should be denied based

---

[2] These "facts" or allegations are incorporated into paragraphs 22, 23, 29, 30, 31, and 32 of Plaintiff's Proposed Amended Complaint.

[3] These "facts" or allegations are set forth in paragraphs 25, 26 27, 28, 29 and 33 of Plaintiff's Proposed Amended Complaint.

on undue delay, bad faith, dilatory motive or undue prejudice. According to Defendant, Plaintiff's Motion should be denied because the opposed amendments included in the Proposed Amended Complaint would not survive a motion to dismiss based upon failure to exhaust administrative remedies. (Doc. No. 23, PageID #s 198-99.) Specifically, the Secretary contends that the five unopposed amendments are separate and distinct from the claims Plaintiff brought before the EEO. The Secretary describes four of the five the opposed amendments as "involv[ing] allegations of other employees reporting Plaintiff for various things in the spring and summer of 2021," and one totally new or different allegation against Alston, all which Plaintiff did not include in his administrative EEO filings. (*Id.* at PageID#s 196-97.)

## II. Standard of Review

### A. Fed. R. Civ. P. 15

Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, if amending the complaint is 'futile,' the court need not grant a motion to amend. *See Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "An amendment is futile when, after including the proposed changes, the complaint still 'could not withstand a Rule 12(b)(6) motion to dismiss.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022) (quoting *Rose v. Harford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000)). In other words, when a defendant opposes a plaintiff's motion to amend under Rule 15 as futile, the court looks to the "substance of the proposed amendment" to determine if the proposed amended complaint could withstand a Rule 12(b)(6) motion to dismiss.

*See Beydoun*, 871 F.3d at 469 (quoting *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002)).

**B. Fed. R. Civ. P. 12(b)(6)**

Under Fed. R. Civ. P. 12(b)(6), the court may dismiss a claim where the claimant has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under this rule, the function of the court is to test the legal sufficiency of the complaint. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The court must construe the complaint in the light most favorable to plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *See Twombly*, 550 U.S. at 555; *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation.").

Additionally, the Court must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need only offer "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555). Although specific facts are not required to meet the basic minimum notice pleading requirements of Rule 8, a complaint must give the defendant fair notice of what the plaintiff's legal claims are and the factual grounds upon which they rest. *See Bassett v. Nat'l Collegiate Ath. Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008). The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions" or a "formulaic recitation of the elements of a cause of

action." *Twombly*, 550 U.S. at 555. Thus, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.*

## III. Law and Analysis

The issue presented by the parties' briefing is whether allowing the filing of Plaintiff's Proposed Amended Complaint that includes the opposed amendments would be futile, i.e., would the Proposed Amended Complaint withstand a partial motion to dismiss for failure to exhaust administrative remedies. The Court concludes that allowing the filing of the Proposed Amended Complaint would not be futile for two independently sufficient reasons: (1) A Rule 12(b)(6) motion to dismiss is not an appropriate procedural vehicle to dismiss *allegations* on the grounds of failure to exhaust administrative remedies; and (2) Plaintiff's Proposed Amended Complaint could survive a Rule 12(b)(6) motion asserting failure to exhaust administrative remedies because each claim for relief Plaintiff asserts in the Proposed Amended Complaint is within the scope of the investigation of his EEOC Complaint.

### A. Plaintiff's Proposed Amended Complaint could withstand a Rule 12(b)(6) motion to dismiss because such a motion could not be granted to dismiss allegations.

"A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Beydoun*, 871 F.3d at 469 (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601, F.3d 505, 520 (6th Cir. 2010). But Plaintiff's Proposed Amended Complaint could withstand a Rule 12(b)(6) motion to dismiss as proposed in Defendant's Brief in Partial Opposition because that motion to dismiss would only be directed at individual *allegations*, not *claims for relief*, i.e., the three causes of action asserted in the Proposed Amended Complaint. The defense of

administrative exhaustion must be asserted through a Rule 12(b)(6) motion to dismiss,[4] yet a Rule 12(b)(6) motion to dismiss must be denied when directed only to some of the allegations in a complaint but not to any particular claim or cause of action.

Rule 12(b) provides that "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This Court has explained that "a claim is the 'demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for.'" *Cent. Mut. Ins. v. Niram Inc.*, 2025 WL 296031 at *5 n.7 (N.D. Ohio Jan. 24, 2025) (quoting Black's Law Dictionary, *Claim* (12th ed. 2024)). A claim is predicated upon an underlying "cause of action," which is the "'group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person[.]" *Id.* (quoting Black's Law Dictionary, *Cause of Action* (12th ed. 2024)). An allegation, by contrast, is "1. A declaration that something is true; esp., a statement, not yet proved, that someone has done something wrong or illegal" or "2. Something declared or asserted as a matter of fact, esp. in a legal pleading; a party's formal statement of a factual matter as being true or provable, without its having yet been proved[.]" Black's Law Dictionary, *Allegation* (12th ed. 2024); *accord Employers' Fire Ins. Co. v. ProMedica*

[4] As a "claim-processing rule," *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 543-44 (2019), administrative exhaustion under Title VII must be asserted through Rule 12(b)(6). *See Phillips v. Shelby Cnty., TN Gov't*, 2024 WL 3384190 at *3 (6th Cir. July 9, 2024) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)) ("[D]ismissal of an employment-discrimination complaint for failure to file a timely discrimination charge is appropriate under Rule 12(b)(6)."); *see also Baskin v. United States*, 2022 WL 19558028 at *3 (N.D. Ohio Nov. 3, 2022); *Jones v. United States*, 2023 WL 5673437 at *3 (M.D. Tenn. Aug. 31, 2023) ("[T]he court finds that the administrative exhaustion requirement under the FTCA . . . is instead a claims-processing rule, with which a failure to comply may provide a basis for dismissal under Rule 12(b)(6)."); *Blaszak v. United States*, 2022 WL 2541723 at *2 n.4 (W.D. Mich. June 10, 2022).

*Health Sys., Inc.*, 524 Fed. Appx. 241, 247 (6th Cir. 2013) (applying Black's law dictionary to define "allegation").  Together, "[a] claim for relief in a complaint is therefore the plaintiff's demand (i.e., in their filed complaint) for a legal remedy to which they assert entitlement on the basis that the *allegations they set forth* satisfy the elements of a preexisting cause of action." *Cent. Mut. Ins.*, 2025 WL 296031 at *3 n.7 (emphasis added).

      Rule 12(b)(6) operates upon a plaintiff's "claim for relief" but not particular allegations.  That is why federal courts do not use Rule 12(b)(6) to dismiss parts of claims.  *See, e.g.*, *Young Hollywood LLC v. White Ops, Inc.*, 2020 WL 6162795 at *6 (C.D. Cal. Aug. 6, 2020) (quoting *Redwind v. Western Union, LLC*, 2019 WL 3069864 at *4 (D. Or. June 21, 2019)) ("Courts may 'not dismiss only some of the claim's allegations if the claim otherwise survives.'"); *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009) ("The Court is unaware, however, of any situation in which a Rule 12(b)(6) motion may be used to strike certain allegations in support of a claim, where the underlying claim itself is not challenged."); *Sanders v. Duke Energy Carolinas, LLC*, 2022 WL 282567 at *4 (W.D.N.C. Jan. 31, 2022) (quoting *Koepplinger v. Seterus, Inc.*, 2018 WL 4055268 at *4 (M.D.N.C. Aug. 24, 2018)) ("Rule 12(b)(6) speaks of a motion to dismiss 'a claim,' not part of a claim.  If the asserted defense does not get rid of the entire claim, then it cannot be dismissed.") (alterations omitted); *Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc.*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014) (quoting *Janis v. Nelson*, 2009 WL 4505935 at *7 (D.S.D. Nov. 24, 2009)) ("A plain reading of Rule 12(b)(6) indicates that the rule may be used only to dismiss a 'claim' in its entirety.").  For example, the court in *Young Hollywood* denied the defendant's 12(b)(6) motion to dismiss on procedural grounds, reasoning that:

> Defendant is not challenging the totality of Plaintiff's claims for negligent or intentional interference with prospective economic advantage.  Defendant is simply trying to

> dismiss some of the facts Plaintiff is using as support for these claims. In other words, Plaintiff is trying to dismiss Plaintiff's facts with respect to some third party business relationships that support Plaintiff's claims. This is not a proper basis for a motion to dismiss under Rule 12(b)(6).

*Id.* at *7.[5] The Court therefore cannot accept Defendant's impermissible procedural maneuver, so it likewise cannot find that Plaintiff's Proposed Amended Complaint is futile on those grounds.

Accordingly, the Court finds that Plaintiff's Proposed Amended Complaint is not futile because it could survive a Rule 12(b)(6) motion to dismiss the allegations or proposed amendments.

**B. Plaintiff's Title VII claims could withstand a Rule 12(b)(6) motion to dismiss because they meet the "expected scope of investigation" test.**

Even assuming that Defendant's arguments were properly directed at Plaintiff's individual claims in the Proposed Amended Complaint, those claims—even with the new allegations—would survive a Rule 12(b)(6) motion to dismiss for failure to exhaust administrative remedies because each claim Plaintiff asserts remains "within the expected scope of the investigation" and "reasonably expected to grow out of the EEOC charge[.]" *Weigel*, 302 F.3d at 379.

"Exhaustion of administrative remedies is an affirmative defense on which a defendant bears the ultimate burden of proof." *Bushong v. Delaware City Sch. Dist.*, 851 Fed. Appx. 541, 545 (6th Cir. 2021) (quoting *Rambis v. Lew*, 590 Fed. Appx. 501, 503 (6th Cir. 2014)) (alterations omitted); *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (same). "Because the failure to exhaust is an affirmative defense, dismissal under Rule 12(b)(6) or 12(c) is appropriate only if the face of the

---

[5] Instead, a party seeking to remove certain allegations, as Defendant aims to do, must satisfy the separate standard for a Rule 12(f) motion to strike, which allows the Court to strike "redundant, immaterial, impertinent, or scandalous matter[s]" from a complaint. Fed. R. Civ. P. 12(f); *see, e.g., My Pillow, Inc. v. LMP Worldwide, Inc.*, 2019 WL 6727298 at *6 (D. Minn. Dec. 11, 2019) ("A motion to strike under Rule 12(f) is the proper means to seek the removal of specific allegations from a pleading, rather than a motion to dismiss under Rule 12(b)(6), which applies to the dismissal of entire claims."); *Merrell v. 1st Lake Props., Inc.*, 717 F. Supp. 3d 512, 521 (E.D. La. 2024) ("This distinction underscores the important difference between Rule 12(b)(6), as a claim-dispositive procedure, and Rule 12(f), as an administrative vehicle for 'cleaning up the proceedings.'") (citation omitted).

complaint shows that the plaintiff has not in fact exhausted her administrative remedies." *Id.* (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)). "[P]roper exhaustion of administrative remedies [] 'means using all steps that the agency holds out, and doing so *properly* so that the agency addresses the issues on the merits.'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (parentheses omitted). Thus, to avoid dismissal of a claim under Title VII for failure to exhaust administrative remedies, the plaintiff "must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361-62 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-(5)(e)(1)).[6]

However, "the Sixth Circuit does not find failure to include a potential claim in an EEOC complaint to be dispositive of a failure to exhaust administrative remedies with respect to that claim." *Ryan v. McDonald*, 191 F. Supp. 3d 729, 740 (N.D. Ohio 2016) (citing *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004)). Rather, "the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)). Because the scope of the administrative complaint determines the scope of permissible claims in the judicial complaint, "[t]he general rule in this circuit [] is that the judicial complaint must be 'limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" *Weigel*, 302 F.3d at 380 (quoting *EEOC v. Bailey Co.*, 563 F.2d 439, 446 (6th Cir. 1977)). Therefore, "where facts related with respect to the charge claim would

---

[6] "A charge is the administrative equivalent of a complaint filed in court," Ballard *v. Ameren Illinois Co.*, 2025 WL 777283 at *1 (C.D. Ill. Mar. 11, 2025) (quoting *Ballard v. Ameren Illinois. Co.*, 840 F.3d 466, 467 (7th Cir. 2016)), and it "must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Barrow v. City of Cleveland*, 773 Fed. Appx. 254, 260 (6th Cir. 2019) (quoting 29 C.F.R. § 1601.12(b)).

prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Pickar v. Grouper Acquisition Co., LLC*, 2025 WL 1180217 at *3 (N.D. Ohio Apr. 23, 2025) (quoting *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998)) (alterations omitted). "Basically, if the facts surrounding an explicitly charged claim would put the EEOC on notice of potential uncharged claims during their investigation, a plaintiff may bring suit on both the claims explicitly charged in and implicitly implicated by her EEOC complaint." *Ryan*, 191 F. Supp. at 740.

Plaintiff's claims in his Proposed Amended Complaint are for "sexual harassment/hostile work environment[,]" "disparate treatment[,]" and "retaliation." (Doc. No. 21-3 at PageID#s 103-05, ¶¶ 55-63, 64-73, 74-77.) Thus, if those three claims are expressly charged in his EEO Complaint or "would reasonably [be] expected to grow out of the charge of discrimination,'" *Weigel*, 302 F.3d at 380, then Defendant's administrative exhaustion defense as to that claim fails.

There is no dispute that Plaintiffs' first claim for "sexual harassment/hostile work environment" and his second claim for "disparate treatment" are unaffected by the Proposed Amended Complaint.[7] However, regarding Plaintiff's third claim for "retaliation," his Proposed

[7] These two claims are clearly within the scope of Miller's administrative claims because they are expressly charged in his EEO Complaint (labeled his "Individual Complaint of Employment Discrimination") (Doc. No. 21-5 at PageID#s 165-69). The EEO Complaint includes "claim(s)" for "alleged discriminatory actions" made on the basis of his "Sex (Gender, Sexual Harassment, Pregnancy, Sexual Orientation, or Gender Identity)." (*Id.* at PageID# 168.) Those discriminatory actions, Plaintiff's EEO Complaint alleges, took the form of discrimination in his "Assignment of Duties" and "Duty Hours [,]" "Harassment[,]" including "Hostile Work Environment" (both "non-sexual" and "sexual"), "Reassignment[,]" and "Terms/Conditions of Employment[.]" (*Id.*) Additionally, the first paragraph of the "Investigative Summary" in the "Report of Investigation" indicates that Plaintiff "said he had been subject to disparate treatment and sexual harassment by his coworkers and management as discussed below." (*Id.* at PageID# 123.) Thus, because his EEO Complaint and the EEO's investigation that followed expressly included claims of, and investigation into, "sexual harassment," "hostile work environment," and "disparate treatment," his first two judicial claims are within the scope of EEO Complaint, and he has exhausted his administrative remedies associated therewith. (Doc. No. 21-5 at PageID#s 122-23.) Therefore, the first two claims in the Proposed Amended Complaint have been administratively exhausted, and therefore are not futile.

Amended Complaint alleges that "Defendant engaged in retaliatory treatment against Plaintiff for his protected EEO activity, including participation in a coworker's EEO complaint and his own EEO activity[.]" (Doc. No. 21-3 at PageID# 105, ¶ 76.) Plaintiff's contention is that the opposed amendments support his claim for retaliation because Alston coordinated a retaliation campaign against him. (Doc. No. 24 at PageID# 210.) However, Defendant's response that the allegations relate to people who were not Alston or to Alston's other conduct is insufficient, because the "scope of investigation" was not limited to Alston or to any specific instance of his allegedly discriminatory conduct, but instead, more broadly focused on a pattern of sexual harassment, hostile work environment, and disparate treatment, some of which was conducted anonymously, that allegedly occurred from March 2016 to September 2022. (Doc. No. 21-5 at PageID# 123.) Indeed, the "Report of Investigation" labels the "date(s) of alleged discrimination" in the "Description of the Complaint" as lasting from "March 2016 to present," with specific instances of discrimination alleged at more precise dates therein. (*Id.*) For the reasons below, Defendant's argument fails because Defendant reads the scope of investigation test too narrowly to support its assertion that Plaintiff failed to exhaust his retaliation claim with respect to the opposed amendments.

The only two cases cited and relied upon by Defendant, *Weigel* and *Lybarger*, cut against the Secretary's argument. Both support the proposition that Plaintiff's retaliation claim "would reasonably [be] expected to grow out of the charge of discrimination[.]" 302 F.3d at 380. In *Weigel*, the Plaintiff brought an age-discrimination claim in her administrative complaint, but did not mention retaliation therein, and then in her judicial complaint, proceeded to raise an age-discrimination claim for discriminatory hiring *and* a retaliation claim that the defendant later "refused to rehire her due to the comments on her exit questionnaire." *See id.* at 379-380. The court explained that "under the

scope of investigation test, 'retaliation naturally grows out of any underlying substantive discrimination charge, making a retaliation claim foreseeable to defendants.'" *Id.* (*quoting Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 833 (6th Cir. 1999)). Her EEOC charge "included facts relating both to [the defendant's] refusal to rehire Weigel [i.e., the retaliatory conduct] and to the allegedly discriminatory treatment she received while previously employed at [the defendant]. It seems logical that any investigation resulting from Weigel's EEOC charge would explore whether there was a relationship between her earlier complaints of discrimination and her subsequent claims of discriminatory hiring." *Id.* In essence, because Weigel had alleged multiple instances of discrimination against her employer in her administrative complaint, the claim for "retaliation naturally gr[ew] out [the] underlying substantive discrimination charge" because the EEOC investigation would have searched for a connection between the instances of discriminatory conduct. *Duggins*, 195 F.3d at 833.

Here, Plaintiff's claims in his EEO Complaint, as described in the Summary of Investigation, contain multiple allegations of discrimination. Specifically, Plaintiff "stated that unidentified coworkers, who were the only ones with access to his work area, defaced his locker and headset drawer with homophobic slurs and pornography in the Spring of 2021, July 2021, October 2021, and September 14, 2022." (Doc. No. 21-5 at PageID# 136.) Further investigating Plaintiff's allegations of discriminatory conduct by unidentified individuals in Spring 2021 and July 2021 would logically require an investigation into who those individuals were and why they were engaging in that conduct in those time periods, and thus could lead to identifying James Gomoka and Matthew Vogel as individuals retaliating against Plaintiff, which is exactly what Plaintiff proposes to add in paragraphs 26, 27, and 28. (Doc. No. 21-3 at PageID# 100, ¶¶ 26, 27.) Even though those allegations of

retaliation are not related to Alston, they do not need to be—they are the kinds of allegations that would prompt an investigation into the discrimination that had occurred against Plaintiff in Spring 2021 and July 2021, who was perpetrating it, and why it had happened.

Similarly, in "claim 2" of the Report of Investigation, Plaintiff stated that "in or around 2019," former FLM Alston spread rumors about him. [Plaintiff] said he was told by ATCS Carly Miller that former FLM Alston stated [Plaintiff] was working overtime to pay for his wife's abortion." (*Id.* at PageID# 129.) Plaintiff further claimed that "he had been questioned in another EEO complaint involving former FLM Alston, after which former FLM Alston became hostile toward him." (*Id.*) Thus, the 'scope of the investigation' arising from Plaintiff's EEO Complaint included allegations against Alston of specific instances of rumor-spreading about and retaliation against Plaintiff. (*Id.*) Further investigation of these allegations would reasonably lead to questions about other instances of Alston's similar conduct (rumor-spreading and retaliation for EEO activity) at other time periods within the overall EEO investigation. Not only do paragraphs 25 and 27 reference Alston expressly, but, as Plaintiff contends, paragraphs 26, 28, and 33 also represent potential additional instances of the continued "hostility toward [Plaintiff]" for his EEO activity. (Doc. No. 21-3 at PageID# 100, ¶¶ 25, 26, 27, 28, 33).

While *Weigel* demonstrates why the opposed amendments fall within the broad 'scope of investigation,' *Lybarger*, Defendant's other cited case, is easily distinguishable from the Proposed Amended Complaint here. In *Lybarger*, the court found that where the plaintiff asserted three discrimination claims based on her employer's conduct, two of which occurred in 2008 and 2009 before the EEOC investigation concluded in late 2009 and a third based on conduct which occurred in 2010 *after* the completion of the EEOC investigation, the third claim could not lay within the scope

of the investigation of the first two claims. *See* 2012 WL 1095915 at *6-8. The reason is that the original EEOC investigation process, which concluded in late 2009, could not uncover facts which "had not yet occurred" in 2010, so a claim based on those facts could not be exhausted by an investigation into only the first two claims. *Id.* at *8. *Lybarger* simply does not apply to this case because the conduct in the opposed amendments allegedly occurred in 2021, but Plaintiff filed his administrative complaint on November 18, 2022. (Doc. No. 21-5 at PageID# 158.) Thus, unlike in *Lybarger*, the investigation into Plaintiff's EEO Complaint was completed in March 2023 (Doc. No. 21-5 at PageID# 150), and a 2023 investigation into Alston's alleged rumor-spreading and retaliation could have uncovered what Alston allegedly did in Spring 2021, i.e., that he conducted a retaliation campaign by falsely accusing Plaintiff of having brought $140,000 to work (Doc. No. 21-3 at PageID# 100, ¶ 25), spreading rumors through James Gomoka and Matthew Vogel (*Id.* at PageID# 100, ¶¶ 26-28), and potentially recruiting an unidentified person to participate by falsely accusing Plaintiff of walking near a bulldozer. (*Id.* at PageID# 100, ¶ 33).

Accordingly, because the Court finds that, liberally construed, the opposed amendments are consistent with Plaintiff's claims such that they "would reasonably [be] expected to grow out of [his] charge of discrimination," the Court finds that all three claims are within the scope of the investigation of his EEO Complaint, and that therefore Plaintiff has exhausted his administrative remedies with respect to each claim for relief. *Weigel*, 302 F.3d at 380. Accordingly, Plaintiff's Proposed Amended Complaint could withstand a Rule 12(b)(6) motion to dismiss, and, therefore, is not futile.

## IV. Conclusion

For all the reasons set forth above, the Court finds that allowing Plaintiff to amend his Complaint to include the Opposed Amendments would not be futile. Accordingly, Plaintiff's Motion

(Doc. No. 21) is hereby GRANTED. Plaintiff shall file his First Amended Complaint on the docket within seven (7) days of the date of this Order.

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: May 1, 2025